UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAQUEL YSASI-HUERTA,

       Plaintiff,                                No. 16-11498

v.                                           District Judge Robert H. Cleland
                                                Magistrate Judge R. Steven Whalen

SECRETARY OF THE DEPARTMENT
OF TRANSPORTATION,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

On August 21, 2015, Plaintiff Raquel Ysasi-Huerta filed a civil complaint in the Northern District of Ohio, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The case was transferred to this Court on April 26, 2016. Before the Court is Defendant's Motion for Summary Judgment [Doc. #21], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

                                  **I.   FACTS**

In her complaint, Plaintiff, a Hispanic female, states that she has worked for the Federal Aviation Administration ("FAA") since 1985. *Complaint* [Doc. #1], ¶ 1. Because she was interested in transferring to the FAA's Great Lakes Region so she could reside with her spouse, who was employed in Ohio, she applied for an position of Management Analyst that had opened in the Detroit, Michigan area. *Id*. ¶¶ 3-4. Six candidates "of various races and sex" were chosen from a pool of applicants for final consideration;

Plaintiff was one of those six candidates. *Id*. ¶¶ 6-7. Ultimately, Mary Taylor, a Caucasian female, was hired. *Id*. ¶ 7. Plaintiff alleges that Joseph Figliuolo III, the terminal district manager in Michigan, was the decision maker, and that in choosing Ms. Taylor for the position, he discriminated against the Plaintiff on the basis of race. She states, "By pre-selecting Taylor, Figliuolo denied the Plaintiff equal employment opportunity based upon his preference to work with a former white female subordinate at the expense of the Hispanic Plaintiff." *Id*. ¶ 11. She also alleges that Figluolo retaliated against her for having brought a previous Equal Employment Opportunity Commission ("EEOC") complaint. *Id*. ¶ 15.

A transcript of the Plaintiff's deposition is found at Exhibit 1 of the Defendant's motion [Doc. #21]. She testified that she had filed an EEOC claim in 2001, alleging racial discrimination when she was not selected for the position of Administrative Officer. She settled that case. *Ysasi-Huerta Deposition*, p. 7. Joe Figliuolo was the FAA representative in the 2001 ADR settlement process, but not in the employment decision. *Id*. pp. 7-8. Between 2001 and the time she applied for the current Management Analyst position, she had no contact with Mr. Figliuolo. *Id*. p. 9.

Plaintiff wanted to change positions from Albuquerque to the Great Lakes Region because her husband, who also worked for the FAA, had relocated to Cleveland. She also saw the new position as one "that was going to allow [her] upward mobility." *Id*. p. 12. The announcement for the Management Analyst position stated that applicants may not be interviewed. *Id*.; p. 18. The announcement indicated that only people who are eligible and highly qualified would be referred to the selecting official for consideration. *Id*. p. 15. Joe Figliuolo was the selecting official. *Id*. 17.

Plaintiff opined that she was better qualified for the position that Mary Taylor, the

person who was ultimately selected. She said that she was "qualified at a higher level," meaning that she had a higher pay band. In addition, she said, her experience as an air traffic controller would have given her "a more in-depth understanding of the position." *Id*. p. 21.

After Ms. Taylor was selected, Plaintiff requested and received an "exit interview" with Mr. Figliuolo. *Id*. pp. 22-23. When she asked Figliuolo what qualifications Taylor had, he replied, "I know Mary, I don't know you." *Id*. p. 24. Plaintiff testified that Figliuolo never went into any detail about Taylor's qualifications, saying only that she and Plaintiff were both equally qualified, but that he knew Taylor. However, Figliuolo made no comments about Plaintiff's race. *Id*. When she told Figliuolo that she was seeking a position to be closer to her husband, Figliuolo stated that he would send her application back to Gabriela Weimann (at Human Resources) to see if she could be transferred. *Id*. pp. 25-26. An email she received from Figliuolo stated, "As we discussed on Wednesday, I'll be asking HR to help me determine what positions you would be eligible for." *Id*. p. 27. Plaintiff responded, "I appreciate your help with this matter." *Id*. p. 30. Eventually, Plaintiff took a position in Cleveland to be closer to her husband, even though she took a $10,000 per year cut to do so. *Id*. p. 43.

Submitted with Defendant's motion as Exhibit 11 are Plaintiff's handwritten notes taken at the time of her exit interview with Gigliuolo. In the first portion, the notes state, "Why/what quals [qualifications] does Mary have that made her the most better qualified," followed with "-nothing/no differences / really just the same it pretty much came down to my personal preference." Later, the notes appear to reflect Gigliuolo's reference to Plaintiff's application package, and a reference to her KSAs (knowledge, skills, and abilities). Referring to Gigliuolo's response, the notes, "Give more detail give

examples of actual tasks;" "Saying I am self motivated didn't really say what's been accomplished....Not what you did but how it helped...What kind of databases–include/state what was in the databases. More specifics."

Submitted with Defendant's motion as Exhibit 4 is the EEOC deposition of Joseph Figliuolo. He testified that Plaintiff had reminded him that he met her back in 2001, but he did not recall that until she told him on the telephone. *Figliuolo EEOC Deposition*, p. 12. He testified that he had worked with Mary Taylor on a daily basis since 2002, and that he still worked with her. *Id*. p. 17. He said that in reviewing the applicants for the Management Analyst position, he looked at everyone's job application package, including any grammatical errors. *Id*. at 41. In terms of how he believed Taylor had superior knowledge, skill, and ability for the job as opposed to the Plaintiff, he testified that "[h]er knowledge, skills and abilities addressed the specific areas that were being addressed, she gave specific examples, she had greater knowledge of the Government programs that were available, she gave examples of not just local things she participated in, but regional and national items." *Id*. p. 43.

Defendant's Exhibit 5 is the EEOC Declaration of Gabriela M. Weimann, a senior HR specialist with the FAA, Great Lakes Region. She described the notice and selection process for the Management Analyst position. She testified that the position is posted, and once the application period closes, her office reviews the applications to determine eligibility and qualifications. Then, a list of qualified candidates is provided to the Selection Official, who in this case was Joseph Figliuolo. *Weimann Declaration*, p. 2. The candidates were listed in alphabetical order, indicating the applicable pay bands (H, I, and J), but she did not rank the candidates. Mr. Figliuolo had the option to interview some, none, or all of the candidates, and had the option to make a selection based solely

on the application packages, with no interviewing. *Id*. Ms. Weimann stated that under FAA policy, where candidates are equally qualified, the candidate who is in the higher pay band is not deemed more qualified, and if two equally qualified candidates are in different pay bands, it is not required that the Selecting Official choose the candidate who is in the higher pay band. *Id*. pp. 2-3.

The referral list provided to Mr. Figliuolo contained six candidates, including Plaintiff and Ms. Taylor. *Referral List*, Defendant's Exhibit 7.

Defendant's Exhibit 8 is the EEOC Declaration of Mr. Figliuolo. He stated that he was the Selecting Official for the position, but he received input and recommendations from Chris Lenfest, the Terminal Assistant District Manager. *Figliuolo Declaration*, p. 3. Mr. Lenfest prepared a matrix of the candidates based on their knowledge, skills, and abilities (KSAs). Lenfest identified Mary Taylor, Rhonda Collier, and Nancy Litwicki as the top three candidates based on their applications, and also discussed why he did not recommend the remaining three candidates. Regarding the Plaintiff, Lenfest said that her KSAs "were not very substantive and did not give specifics that showed her readiness for this position." *Id*. p. 4. Mr. Figliuolo said that he selected Ms. Taylor "because she was the best qualified candidate for the job," and "knew her and had worked with her for more than 10 years." *Id*.

Defendant's Exhibit 9 is the EEOC Declaration of Christopher Lenfest. At Mr. Figliuolo's request, he reviewed the applications of the six candidates for the position. He said that he ranked Plaintiff in the less qualified group for the following reasons:

> "For two reasons: first, the vacancy announcement is specific about the importance of being able to communicate with all levels of the organization. [Plaintiff's] package had numerous grammatical errors. I was left with a negative impression about her communication skills–if she could not appropriately communicate in describing her own skills, I did not believe she could effectively communicate with all levels of management. Second,

the descriptions she provided regarding her skills were very generalized and gave few examples of how she demonstrated those skills." *Lenfenst Declaration*, p. 2.

Defendant's Exhibit 14 is the application package that Plaintiff submitted. In the narrative portion, it in fact contains numerous spelling, grammatical, and syntactical errors.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the

opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION[1]

Plaintiff does not claim that Mr. Figliuolo or anyone else in a decision-making role expressly stated a desire to not offer her the position or to take any adverse action because she was a Hispanic female, and in fact testified that Figliuolo made no comments about her race. *See Plaintiff's Deposition*, Defendant's Exhibit 1, p. 24. Her Title VII discrimination claim is therefore based on circumstantial evidence. In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once she has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[2] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for

---

[1] The Plaintiff has withdrawn, or ceded her retaliation claim. *Plaintiff's Response* [Doc. #22], at p. 25, and that claim may therefore be dismissed.

[2] This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

discrimination.

In order to establish a prima facie showing of racial discrimination in such a case, the Plaintiff must introduce sufficient evidence that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas,* 411 U.S. at 802. "[T]he burden of establishing a *prima facie* case of disparate treatment is not onerous," and a plaintiff must merely show that she "applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

### A.     The Prima Facie Case

As a Hispanic female, Plaintiff was a member of a protected class.  She was not selected for the Management Analyst position, and therefore suffered an adverse action. Only "qualified" candidates were selected for referral to the Selection Officer, and Plaintiff was one of six candidates that were referred; she was therefore qualified for the position.  Finally, the position went to a Caucasian female, a "similarly situated individual[] outside of [the] protected class." *Smith v. City of Salem,* 378 F.3d at 570. Therefore, Plaintiff has met the requirements of a *prima facie* case.

### B.     Pretext

Under the *McDonnell Douglas* formulation, the burden now shifts to the

Defendant to show a non-discriminatory basis for its decision, and Defendant has in fact offered such evidence. First, as shown by a comparison of Plaintiff's and Ms. Taylor's application packages, as well as Mr. Figliuolo's and Mr. Lenfest's assessment of those packages, Plaintiff's qualifications for this particular job were not as strong as Ms. Taylor's. Ms. Taylor presented a more detailed account of her experience and how it might specifically tie into the duties of a Management Analyst. Mr. Figliuolo testified in his EEOC deposition [Defendant's Exhibit 4, at 43], that Taylor's "knowledge, skills and abilities addressed the specific areas that were being addressed, she gave specific examples, she had greater knowledge of the Government programs that were available, she gave examples of not just local things wshe participated in, but regional and national items." And while Plaintiff argues that Figliuolo chose Ms. Taylor based only on "personal preference," her own notes show that he discussed with her the lack of specificity and detail in her application.

Moreover, the posting for the position (found at Defendant's Exhibit 3) stated that the duties included "preparing and presenting written and verbal briefings for the purpose of communicating a broad range of information to officials within and outside the immediate organization." Yet the narrative portion of Plaintiff's application was not only lacking in detail and specificity, but it contained numerous spelling and grammatical errors. It was those deficiencies that persuaded Mr. Lenfest to place Plaintiff in the lower tier of his recommendations, even before Mr. Figliuolo saw the applications.

Plaintiff's theory that she should have been deemed more qualified than Ms. Taylor based on her pay band is inconsistent with the Declaration of HR Specialist Gabriela Weimann, who stated that under FAA policy, being in a higher pay band does not make an applicant more qualified, and it is not required that the Selecting Official

choose the candidate that is in the higher pay band. *Weinmann Declaration* [Defendant's Exhibit 5], pp. 2-3.

The Defendant has therefore satisfied its burden of showing a non-discriminatory reason for Mr. Figliuolo's decision to award the position to Ms. Taylor rather than Plaintiff. Under the third prong of *McDonnell Douglas*, the burden now shifts back to the Plaintiff to show that the Defendant's stated reasons are pretextual. She may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the adverse action, or (3) that the proffered reason was not sufficient to motivate the adverse action. *Russell v. University of Toledo*, 537 F.3d 596, 604 (6th Cir.2008) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (*overruled on other grounds*, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir.2009)).

As discussed above, the Defendant's proffered reason–the deficiencies in Plaintiff's application package vis-a-vis Ms. Taylor's–has a basis in objective and demonstrated fact. That stated reason–that Ms. Taylor was the more suitable candidate–was sufficient to motivate the rejection of Plaintiff's application. That leaves the second prong–that the proffered reason was not the actual reason, but merely a pretext.

First, under *Manzer* and its progeny, the fact that a plaintiff has shown a *prima facie* case is not in itself sufficient to show pretext at the third stage of *McDonnell Douglas*. The *Manzer* Court held as follows:

> "If the bare bones elements of a plaintiff's prima facie case were sufficient to make this showing [of pretext], however, the entire 'burden shifting' analysis of *McDonnell Douglas* and its successors would be illusory. No case could ever be culled out after the prima facie stage and every case would have to be determined by a jury. We do not believe that this was the intent of Congress or the outcome envisioned by the Supreme Court in its

-10-

long line of cases implementing employment discrimination legislation. Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of...discrimination." 29 F.3d at 1084.

Plaintiff relies heavily on the argument that she was more qualified than Ms. Taylor because she was in a higher pay band. But as discussed above, that proposition is unsupported, and indeed contradicted by the evidence, specifically the Declaration of Ms. Weimann.

The Plaintiff has also offered statistical evidence in support of her argument that the Defendant's reasons were pretextual. She posits that while 8.3 percent of the federal civilian workforce in 2013 was Hispanic, only 2.28 percent of employees in the FAA's Great Lakes Region are Hispanic.

The Sixth Circuit has held that in order to show pretext, "the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Barnes v. Gencorp.*, 896 F.2d 1457, 1466 (6th Cir. 1990). In *Davis v. Landscape Forms, Inc.*, 2015 WL 13173236, at *9 (W.D. Mich. 2015), aff'd, 640 F. App'x 445 (6th Cir. 2016), the Court observed,

> "Although statistical evidence is admissible to prove pretext, it is not determinative and cannot, on its own, prove pretext. *McDonnell-Douglas*, 411 U.S. at 805; *Vallanueva v. Wellesley College*, 930 F.3d 124, 130-131 (1st Cir. 1991). 'The fact that a certain percentage of individuals is or is not represented in the workplace is not necessarily dispositive and may, in fact, mean nothing at all.'*Ballor v. Alcona Cnty. Rd. Comm'n*, No. 95-cv-10366, 1997 U.S. Dist. Lexis 4337 (E.D. Mich. 1997) (citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579 (1978)), *aff'd* 145 F.3d 1329 (6th Cir. 1998)."

*See also O'Donnell v. city of Cleveland*, 148 F.Supp. 3d 621, 634 (N.D. Ohio 2015)("Statistics standing virtually alone are improper vehicles to prove discrimination")(citation omitted).

In this case, raw statistics comparing FAA employees in the Great Lakes Region[3] with all Hispanic federal employees nationwide does not provide useful evidence of pretext. The national figures would include states with much higher Hispanic populations than the Midwestern states in the Great Lakes Region, so there would be no valid correlation, and would not eliminate the most common nondiscriminatory explanation for the disparity. *See Long v. City of Saginaw*, 911 F.2d 1192, 1201 (6th Cir. 1990)("[S]tatistics without correlation are indicative of no meaningful inference or conclusion."). The Plaintiff has not rebutted Defendant's showing of a non-discriminatory reason for not selecting her for the Management Analyst position.

I recognize that Ms. Ysasi-Huerta was disappointed in not getting the job, and that she no doubt views the FAA's employment decision as unfair. And my recommendation should not be read to impugn her competence at her present position, or her long-time value to the FAA. But this Court does not "sit as a super-personnel department" to second-guess the wisdom of an employer's hiring decisions. *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 462 (6th Cir.2004) (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 960 (8th Cir.1995)). The question is not whether the decision was unfair or unwise, but whether it was motivated by improper considerations of race. The Plaintiff has failed to support any genuine issue of material fact as to her claim of discrimination, and under the facts of this case, no rational trier of fact could find in her favor. *Simmons-Harris v. Zelman, supra*. Therefore, summary judgment should be granted in Defendant's favor.

---

[3] Defendant points out that the Great Lakes Region covers Illinois, Indiana, Michigan, Minnesota, North Dakota, Ohio, South Dakota, and Wisconsin. *Reply Brief* [doc. #23], p. 6.

### IV. CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Doc. #21] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                s/ R. Steven Whalen
                R. STEVEN WHALEN
                UNITED STATES MAGISTRATE JUDGE

Dated: February 26, 2019

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on February 26, 2019, electronically and/or by U.S. mail.

                                           s/Carolyn M. Ciesla
                                           Case Manager to the
                                           Honorable R. Steven Whalen